# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
**Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

## MOTION INFORMATION STATEMENT

**Docket Number(s):** _____     Caption [use short title] _____

**Motion for:** _____

Set forth below precise, complete statement of relief sought:

_____

_____

_____

_____

**MOVING PARTY:** _____     **OPPOSING PARTY:** _____

☐ Plaintiff       ☐ Defendant
☐ Appellant/Petitioner    ☐ Appellee/Respondent

**MOVING ATTORNEY:** _____     **OPPOSING ATTORNEY:** _____
[name of attorney, with firm, address, phone number and e-mail]

_____     _____

_____     _____

_____     _____

Court-Judge/Agency appealed from: _____

**Please check appropriate boxes:**                    **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND**
                                                        **INJUNCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):     Has request for relief been made below?          ☐ Yes  ☐ No
☐ Yes ☐ No (explain):_____     Has this relief been previously sought in this Court?  ☐ Yes  ☐ No
                                                        Requested return date and explanation of emergency:_____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☐ Don't Know     _____
Does opposing counsel intend to file a response?
☐ Yes ☐ No ☐ Don't Know     _____

Is oral argument on motion requested?     ☐ Yes   ☐ No   (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?     ☐ Yes   ☐ No   If yes, enter date:_____

**Signature of Moving Attorney:**
_____**Date:** _____     Service by:  ☐ CM/ECF     ☐ Other [Attach proof of service]

---

## ORDER

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED  DENIED**.

**FOR THE COURT:**
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____     By: _____

**Form T-1080** (rev. 7-12)

No. 11-4416

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

RAJ RAJARATNAM,

*Defendant-Appellant.*

*On Appeal From the United States District Court
for the Southern District of New York*

UNOPPOSED MOTION OF PROFESSOR G. ROBERT BLAKEY FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT'S PETITION FOR REHEARING AND REHEARING *EN BANC*

Tai H. Park
Park & Jensen LLP
630 Third Avenue, 7th Floor
New York, New York 10017
(646) 200-6300

*Attorneys for Proposed* Amicus
Curiae *Professor G. Robert Blakey*

Pursuant to Fed. R. App. P. 29, Professor G. Robert Blakey respectfully requests leave to file an *amicus curaie* brief in support of Appellant's Petition for Rehearing and Rehearing *En Banc* in the above-captioned appeal.

Attached as an appendix to this motion is Professor Blakey's brief in support of Appellant's Petition for Rehearing and Rehearing *En Banc*.

Professor Blakey is the William J. and Dorothy K. O'Neill Professor of Law Emeritus at the Notre Dame Law School and drafted the so-called "Blakey Bill" that became the model for the key language of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), the interpretation of which is at the core of the panel's decision in this matter and proposed *amicus'* brief.

Professor Blakey has an abiding interest in the proper interpretation and application of the requirements of Title III. He believes that the panel's decision incorrectly interpreted the requirements of Title III, which will ineluctably result in the substantial deterioration of the privacy protections central to the purpose of Title III.

Proposed *amicus's* brief will likely be helpful to the Court because he has unique insight into the underlying public policies of and legislative process by which Title III was passed.

Attached as Exhibit 1 to this Motion is the Declaration of Tai H. Park in Support of Motion of Professor Blakey for Leave to File Brief as *Amicus*.

Attached as Exhibit 2 to this Motion is the Proposed Brief of *Amicus Curiae* Professor G. Robert Blakey in Support of Appellant.

For the foregoing reasons and those contained in the appended Declaration, Professor Blakey respectfully requests that this Court grant his motion to file the attached brief in support of Appellant's Petition for Rehearing and Rehearing En Banc.

July 31, 2013                                        Respectfully submitted,

By:      */s/ Tai H. Park*

Tai H. Park
PARK & JENSEN LLP
630 Third Avenue
New York, New York 10017

*Counsel for Proposed Amicus Curiae*

**EXHIBIT 1**

No. 11-4416

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

RAJ RAJARATNAM,

*Defendant-Appellant.*

*On Appeal From the United States District Court
for the Southern District of New York*

DECLARATION OF TAI H. PARK IN SUPPORT OF MOTION OF
PROFESSOR BLAKEY FOR LEAVE TO FILE BRIEF AS AMICUS

I, Tai H. Park, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a partner in the law firm Park & Jensen LLP in New York and counsel for proposed *amicus curiae* Professor G. Robert Blakey, and I make this declaration in support of Amicus's motion for leave to file a brief as *amicus curiae* in the above-captioned appeal.

2. With the consent of all parties, Professor Blakey filed an *amicus curiae* brief in support of Appellant's initial appeal of the underlying judgment in the captioned case.

3. The parties have again consented to Professor Blakey filing a brief in support of Appellant's Petition for Rehearing and Rehearing *En Banc*.

I declare under penalty of perjury that the foregoing is true and correct.

July 31, 2013

By:   */s/ Tai H. Park*

Tai H. Park
PARK & JENSEN LLP
630 Third Avenue
New York, New York 10017
(646) 200-6325
tpark@parkjensen.com

**EXHIBIT 2**

# 11-4416-cr

## United States Court of Appeals

*for the*

### Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

RAJ RAJARATNAM,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF *AMICUS CURIAE* PROFESSOR
## G. ROBERT BLAKEY IN SUPPORT OF APPELLANT

G. ROBERT BLAKEY
Professor of Law Emeritus
NOTRE DAME LAW SCHOOL*
7002 East San Miguel Avenue
Paradise Valley, Arizona 85253
Telephone: (574) 631-5717
Facsimile: (574) 631-4197
Email: G.R.Blakey.1@nd.edu

*\*For identification only*

TAI H. PARK
PARK & JENSEN LLP
630 Third Avenue
New York, New York 10017
Telephone: (646) 200-6300
Facsimile: (646) 200-6301
Email: tpark@parkjensen.com

*Counsel for Amicus Curiae*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................... ii

INTEREST OF AMICUS CURIAE ........................................................1

PRELIMINARY STATEMENT ................................................3

ARGUMENT ........................................................................5

   I.   THE GOVERNMENT'S FAILURE TO PROVIDE A "FULL AND COMPLETE" STATEMENT OF NECESSITY VIOLATED THE CORE PRE-CONDITION FOR A LAWFUL WIRETAP UNDER TITLE III, RENDERING THE RESULTING INTERCEPTIONS ILLEGAL AND THEIR PRODUCT INADMISSIBLE ........................................................................5

   II.   THE PANEL'S DECISION INCORRECTLY APPLIED THE *FRANKS V. DELAWARE* STANDARD TO TITLE III'S STATUTORY NECESSITY REQUIREMENT AND OBVIATED THE STATUTORY REMEDY OF SUPPRESSION ........................................................................9

CONCLUSION ........................................................................14

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Berger v. State of N.Y.*, 388 U.S. 41(1967)........................................................ 5, 6, 8

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980)....................................................14

*Garcia v. United States*, 469 U.S. 70 (1969) .........................................................1

*H.J., Inc., v. Northwestern Bell Telephone Co.,* 492 U.S. 229 (1989) ....................14

*Katz v. United States*, 389 U.S. 347 (1967) .........................................................6, 7

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)..........................................................9

*United States v. Amanuel,* 615 F.3d 117 (2d Cir. 2010).........................................10

*United States v. Becton,* 601 F.3d 588 (D.C. Cir. 2010) ........................................13

*United States v. Bianco*, 998 F.2d 1112 (2d Cir. 1993)...........................................12

*United States v. Cole*, 807 F.2d 262 (1st Cir. 1986)...............................................13

*United States v. Giordano,*  416 U.S. 505 (1974)................................ 4, 7, 8, 10, 11

*United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2005).............................13

*United States v. Guerra-Marez*, 928 F.2d 665 (5th Cir. 1991) ..............................13

*United States v. Jones*, 132 S. Ct. 945 (2012) ........................................................12

*United States v. Leisure,* 844 F.2d 1347 (8th Cir. 1988).........................................13

*United States v. Miller*, 116 F.3d 641 (2d Cir.1997) ..............................................12

*United States v. Poulsen,* 655 F.3d 492 (6th Cir. 2011) .........................................13

*United States v. Small,* 423 F.3d 1164 (10th Cir. 2005).........................................13

*United States v. Vest*, 813 F.2d 477 (1st Cir. 1987)..................................................9

ii

*United States v. Williams*, 737 F.2d 594 (7th Cir. 1984).........................................13

**STATUTES**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968,
18 U.S.C. §§ 2510-2522 (2013) .................................................................. passim

**OTHER**

Ernest Weekly, Cruelty to Words (1931) ...................................................3

President's Comm'n on Law Enforcement & the Admin. of Justice, Task Force
Report: Organized Crime (1967)...........................................................2

President's Comm'n on Law Enforcement & the Admin. of Justice, The Challenge
of Crime in a Free Society (1967), *available at*
https://www.ncjrs.gov/pdffiles1/nij/42.pdf ...........................................2

S. Rep. No. 90-1097(emphasis added), *reprinted in*
1968 U.S.C.C.A.N 2112, 2177 ............................................... 1, 5, 6, 9

## INTEREST OF AMICUS CURIAE

*Amicus curiae* is G. Robert Blakey.[1]  Professor Blakey is the William J. and

Dorothy K. O'Neill Professor of Law Emeritus at the Notre Dame Law School,

where he taught for over thirty years.[2]  Professor Blakey drafted the so-called

"Blakey Bill" that became the model for the key language of Title III of the

Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522

(2013) (hereinafter "Title III").  Professor Blakey served as a consultant on the

investigatory process to the President's Commission on Law Enforcement and

Administration of Justice, which authored in 1967 both  *The Challenge of Crime in*

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c) (5), no party's counsel authored this brief in whole or in part or contributed money to fund preparing or submitting this brief.  No person – other than *amicus* or his counsel – contributed money to fund preparing or submitting the brief.

[2] From 1969 to 1973, Professor Blakey was the chief counsel to the Subcommittee on Criminal Laws and Procedures.  During the processing of Title III, he was a special consultant to the Subcommittee, wrote a draft of the Judiciary Committee Report on Title III, and assisted Senator John L. McClellan, Title III's chief sponsor, on the Senate floor during its passage.  Under Senator McClellan's leadership, the Judiciary Committee drafted its report as it did because "of the complexity in the area of wiretapping and electronic surveillance," and because "[it] believe[d] that a comprehensive and in-depth analysis of title III would be appropriate in order to make *explicit* congressional intent . . . ."  S. Rep. No. 90-1097(emphasis added), *reprinted in* 1968 U.S.C.C.A.N 2112, 2177 (hereinafter "Senate Report"); *see Garcia v. United States*, 469 U.S. 70, 76 (1984) (characterizing committee reports as "the authoritative source" for finding the congressional intent of those who draft and study proposed legislation).

*a Free Society*[3] and the *Task Force Report; Organized Crime*[4]. It recommended controlled use of electronic surveillance. He testified before Congress regarding the intent of the drafters of Title III. In addition, he was, in 1967-68, the Reporter to the ABA Project on Standards for Electronic Surveillance. Finally, he also assisted in drafting and implementing wiretapping legislation in 39 of the 43 states with such laws.

Accordingly, Professor Blakey has an abiding interest in the proper interpretation and application of the requirements of Title III, which Congress passed to protect the privacy of individuals from unnecessary intrusions. Professor Blakey believes that the panel's decision incorrectly interpreted the requirements of Title III, which will ineluctably result in the substantial deterioration of the privacy protections central to the purpose of Title III. As such, the decision is an issue of exceptional importance.

Professor Blakey respectfully submits this brief in support of Appellant's petition for rehearing, or rehearing *en banc*.

---

[3] President's Comm'n on Law Enforcement & Administration of Justice, The Challenge of Crime in a Free Society (1967), *available at* https://www.ncjrs.gov/pdffiles1/nij/42.pdf.

[4] President's Comm'n on Law Enforcement & the Admin. of Justice, Task Force Report: Organized Crime (1967).

## PRELIMINARY STATEMENT

In an age of increasing surveillance and advances in technology, citizens'
privacy is eroding at an alarming pace. The startling headlines touching on the
recent NSA revelations provide but one illustration.  More than forty years ago,
Congress and its leadership presciently foresaw the danger of law enforcement
initiatives that compromise personal privacy in single-minded pursuit of crime.  It
passed Title III as a comprehensive statutory scheme to define narrowly the *pre-*
conditions law enforcement agents must satisfy to monitor legally and
constitutionally a person's phone calls or related private communications.  Anyone
– public or private – who taps a phone without satisfying these pre-conditions,
when possible, commits a crime, forfeits any benefit gained by his or her
transgression, and must civilly make whole the damage inflicted on the victim.
That has been the law since 1968. It ought not change now through the judiciary.

Along with other stringent pre-conditions, Title III requires that law
enforcement agents receive pre-authorization for a wiretap from an Article III
judge based on a "full and complete" description of why such an invasion is
"necessary," that is, a weapon of last resort.[5]  Under the "necessity" requirement,
all law enforcement agents are required faithfully to describe the alternative

---

[5] "Full and complete" is a common law couplet traditionally used in legislation to
emphasis a legal point.  *See* Ernest Weekly, Cruelty to Words 43 (1931).

investigative techniques they tried and failed, or reasonably appear ineffective or too dangerous. Congress included this core requirement in Title III to ensure that wiretaps were *only* used when all else failed. If a wiretap was obtained without that necessity "fully and completely" shown, Title III expressly requires the exclusion from evidence of the fruits of the illicit behavior.

Holding that a failure to satisfy the necessity requirement is obviated by a *Franks v. Delaware* analysis, the panel largely ignored the plain language of Title III, read in light of its congressional history and the straightforward construction of Title III rendered by the Supreme Court in *United States v. Giordano,* 416 U.S. 505 (1974). When Congress, after mature reflection and debate, incorporated an unqualified statutory mandate of suppression for such violations, a judge-crafted procedure cannot lawfully (or constitutionally) supplant it. The same process that wrote it must change it: two houses of Congress and a signature by the president.

*Amicus* respectfully requests that the Court grant Appellant's petition for rehearing, or a rehearing *en banc,* to correct the portion of the panel's decision finding that a *Franks v. Delaware* analysis displaces Title III's statutorily-mandated remedial framework. [6]

---

[6] *Amicus* takes no position on the other portions of the panel's decision.

4

## ARGUMENT

**I.    THE GOVERNMENT'S FAILURE TO PROVIDE A "FULL AND COMPLETE" STATEMENT OF NECESSITY VIOLATED THE CORE PRE-CONDITION FOR A LAWFUL WIRETAP UNDER TITLE III, RENDERING THE RESULTING INTERCEPTIONS ILLEGAL AND THEIR PRODUCT INADMISSIBLE.**

Both the plain language of Title III and its statutory history unequivocally indicate  Congress' intention to enact a single evidentiary remedy for a violation of its core requirement of necessity: the exclusion of the fruits of an illegal interception.  This remedy is explicit, unqualified, and fundamental to the design of this comprehensive legislation, and neither Congress nor the sponsors of the 1968 legislation ever authorized or contemplated that courts could apply a different, judge-made standard of review.

The passage of Title III in 1968 was the culmination of years of heated debate between those who championed the need for effective law enforcement and the powerful voices in the judicial, legislative, and executive branches that feared encroachments on privacy.  *See Berger v. State of N.Y.*, 388 U.S. 41, 112-13 (1967) (White, J., dissenting); Senate Report at 2231 ("Wiretapping and other forms of eavesdropping are recognized by even their most zealous advocates as encroachments on a man's right to privacy . . . the most comprehensive of rights and the right most valued by civilized men.") (internal quotations omitted).  In 1967, President Lyndon B. Johnson, expressing one polar view, said "We should outlaw all wiretapping – public and private – wherever and whenever it occurs,

5

except when the security of the Nation itself is at stake – and only then with the strictest safeguards." Senate Report at 2233. Even those who believed that wiretapping was a necessary tool recognized its Orwellian potential. As such, they saw the need to restrict its use carefully and narrowly by creating the strongest possible safeguards against its abuse, principally by requiring *prior* judicial approval. *See id.* at 2163.

*Berger* and *Katz v. United States*, 389 U.S. 347 (1967), were the twin Supreme Court opinions that formed the backdrop of Title III. These decisions established that government wiretapping was only constitutionally acceptable under the strictest limitations. *Berger*, 388 U.S. at 63; *see also* Senate Report at 2155-56. Indeed, at the time of *Berger*, its language so emphasized the perils of wiretapping and the pre-conditions needed to make it constitutionally acceptable that many believed the Supreme Court sounded wiretapping's death knell. A crucial condition was judicial pre-authorization. *See Berger*, 388 U.S. at 56 ("The need for particularity and evidence of reliability in the showing required when judicial authorization of a search is sought is especially great in the case of eavesdropping. By its very nature eavesdropping involves an intrusion on privacy that is broad in scope."); *Katz*, 389 U.S. at 358-59 ("[T]he Government agents here ignored the procedure of antecedent justification that is central to the Fourth

Amendment, a procedure that we hold to be a constitutional precondition of the kind of electronic surveillance involved in this case.") (citations omitted).

Thus, Congress carefully crafted Title III as a broad *prohibition* of electronic surveillance, with a narrow exception permitting law enforcement agents to use it only in special and controlled circumstances.  18 U.S.C. § 2511; *Giordano*, 416 U.S. at 515 ("Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications.  These procedures were not to be routinely employed as the initial step in criminal investigation.").

To ensure wiretaps always remained a method of last resort, Title III requires that law enforcement agents provide an Article III judge with a "full and complete" description of the alternative investigative techniques that the agents tried and failed or reasonably appear ineffective or too dangerous.  This pre-condition of "necessity" was essential to the passage of the statute, for it gave opponents a measure of comfort that wiretaps would be utilized only when an Article III judge concluded *before* the surveillance began that it was necessary.

In crafting the necessity requirement, because of the unanimous concern among proponents *and* opponents of Title III about the danger of abuse posed by

such an inherently invasive investigative technique, the statutory safeguards written into Title III by its sponsors went beyond those required by the Constitution.[7]  Thus, while *Berger* and *Katz* held that under the Fourth Amendment electronic surveillance was illegal absent a "showing of special facts" or "exigent circumstances," *Berger*, 388 U.S. at 60, Title III went further to mandate, *without exception,* a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1) (c).  Accordingly, the "full and complete" statement requirements of Title III "play a central role in the statutory scheme," *see Giordano*, 416 U.S. at 528, in ensuring that Title III protects privacy interests through adherence to its statutory framework.  An Article III judge cannot perform his or her duty unless he or she is in possession of all of the data necessary to make an informed decision.

Title III was the result of a careful calibration of the competing interests by its sponsors between privacy and law enforcement.  In fact, even with the tight

---

[7] Examples of provisions of Title III that go beyond the Constitution's requirements include Section 2516 (1) (requiring authorization by the Attorney General), Section 2516 (1)(a)-(t) (limiting electronic surveillance to cases of certain serious crimes), Section 2518 (3) (permitted denial or modification of applications), Section 2518(6) (permitting issuing judges to require periodic reports during the duration of the order), and Section 2518 (8) (requiring recording to prevent editing, immediate sealing, and judicially supervised custody).

protections built into Title III, many dissenting voices among the legislators and others would have barred all forms of wiretaps other than for national security reasons. *See* Senate Report at 2222, 2238, 2245 (containing legislative commentary opposing the use of electronic surveillance).

## II. THE PANEL'S DECISION INCORRECTLY APPLIED THE *FRANKS V. DELAWARE* STANDARD TO TITLE III'S STATUTORY NECESSITY REQUIREMENT AND OBVIATED THE STATUORY REMEDY OF SUPPRESSION.

Congress expressly mandated a comprehensive remedial scheme in Title III. Central to it is the suppression of the fruits of any illegal wiretap. *See* 18 U.S.C. § 2515 ("Whenever any wire or oral communication has been intercepted, *no* part of the contents of such communication and *no* evidence derived therefrom may be received in evidence in any trial . . . if the disclosure of that information would be in violation of this chapter.") (emphasis added). Nowhere in Title III did Congress grant judicial officers authority to accept *post hoc* justifications or new evidence to amend and correct deficient wiretap applications. Had it wanted to give such discretion, Congress could have set it out on the face of the statute, but it did not.[8]

---

[8] The ancient maxim is '*Expressio unius est exclusiosio alterius.*' *See Swierkiewicz v. Sorema*, 534 U.S. 506, 513 (2002); *accord United States v. Vest*, 813 F.2d 477, 482 (1st Cir. 1987) ("[W]e believe that if Congress had intended to commit to the courts general authority to create exceptions to section 2515 in the same manner as the court might develop future exceptions to the fourth amendment exclusionary rule, Congress could certainly have said so more clearly.").

In fact, Congress made the evidentiary exclusion of the fruits of illicit wiretapping more extensive than the Fourth Amendment, extending it well beyond constitutional limits, and to grand juries, administrative agencies, and the committees of Congress itself.  18 U.S.C. § 2515; *see also United States v. Amanuel,* 615 F.3d 117, 125 (2d Cir. 2010) (acknowledging that Title III provides the remedy of suppression for violations of the act that do not amount to constitutional violations).  Congress did all it could to protect privacy.  A judicial officer, of course, is without power to curtail a protection for privacy that the Congress expressly mandated.  Indeed, Articles I and III make it unconstitutional for an Article III court to impinge on Article I powers.

The only Supreme Court precedent on point is *Giordano*, and subsequent Supreme Court holdings and dicta have not weakened it.  Thus, it binds this Court. In *Giordano*, law enforcement agents failed to obtain wiretap authorization from the required high-level Justice Department personnel.  As such, the Court rightly suppressed the fruits of the wiretap.  416 U.S. at 528.  The Court observed, "Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that *directly and substantially* implement the congressional intention to limit the use of intercept procedures."  *Id*. at 527 (emphasis added).

10

Under Section 2518(10) (a)'s plain language, where law enforcement agents "ignore" a provision of Title III that "play[s] a central role in the statutory scheme" – the full and complete statement requirement is such a provision – suppression is *the* required remedy.  *Id*. at 528.  Necessity is no less central than providing that only certain, high-level Justice Department personnel may approve an application for a wiretap.

The panel's decision seeks to distinguish *Giordano* on the basis that it was decided "before the Supreme Court's decision in *Franks*" (Panel Opinion  at 17), but that chronology is immaterial.  While the Supreme Court in *Giordano* interpreted the *statutory* requirement of suppression for a violation of Title III—a decision directly on point here—*Franks,* in contrast, dealt with a separate, court-developed exclusionary rule under the Fourth Amendment, not a statute, for challenging a search warrant.  'Evolution' of constitutional jurisprudence, in particular the judicially-fashioned exclusionary rule, is surely within the constitutional powers of the judicial branch, but such jurisprudence cannot constitutionally apply to a separately-enacted statute and its express requirements. 'Evolution' is a soft word for 'change,' and while the Court is free to change court-fashioned rules, Congress alone has the constitutional power to rewrite statutes.

Title III contains its own remedial scheme, and *Franks* did not, and could

not, modify an independent statute or the *Giordano* decision.  Forcefully and

properly, Justice Alito made this point in *United States v. Jones*:

> After *Katz*, Congress did not leave it to the courts to develop a
> body of Fourth Amendment case law governing that complex
> subject. Instead, Congress promptly enacted a comprehensive
> statute, *see* 18 U.S.C. §§ 2510–2522 (2006 ed. and Supp. IV),
> and since that time, the regulation of wiretapping has been
> governed primarily by statute and not by case law.  In an ironic
> sense, although *Katz* overruled *Olmstead*, Chief Justice Taft's
> suggestion in the latter case that the regulation of wiretapping
> was a matter better left for Congress has been borne out.

132 S. Ct. 945, 963 (2012) (Alito J., concurring) (citations omitted).   While cited

by Appellant in his principal appeal, the panel's decision did not acknowledge

Justice Alito's apt observation.  Nor did it address Title III's plain meaning,

supported by its ample legislative history.

Instead, the panel relied on judicial precedent: *United States v. Bianco*, 998

F.2d 1112 (2d Cir. 1993), and *United States v. Miller*, 116 F.3d 641 (2d Cir. 1997),

two cases that, concededly, applied *Franks* to a Title III challenge.[9]

Notwithstanding the controlling decision in *Giordano,* neither *Bianco* nor *Miller*

even cited – much less distinguished – the case.  Moreover, neither *Bianco* nor

*Miller* pointed to any defensible basis for abrogating a strict statutory requirement

---

[9] In an *en banc* hearing, this Court would not be controlled by errant precedent.

with a more permissive and flexible judge-made procedure.  This "settled

precedent" (Panel Opinion at 16) simply failed to grapple with the question at bar:

on what basis may a judicial officer substitute a judge-made remedial process for a

congressionally-mandated remedy, especially in the face of a contrary controlling

Supreme Court precedent? The panel erred by relying on this wrongly decided

precedent.[10]

In 1968, technology was rudimentary, but the nonetheless real fear of an

Orwellian society rightly caused the 90th Congress—led by Title III's sponsors and

their thoughtful supporters in law enforcement, the judiciary, the Bar and

elsewhere—to mandate stringent and exclusive limitations *before* law enforcement

undertook wiretapping.  The same Congress also specified the precise remedies for

a Title III violation, including criminal, civil, and evidentiary sanctions.  Today,

---

[10] The cases cited by the panel from other circuits are similarly not persuasive authority.  The majority of the cases fail to cite, much less distinguish, *Giordano*. *See United States v. Poulsen*, 655 F.3d 492 (6th Cir. 2011); *United States v. Becton*, 601 F.3d 588 (D.C. Cir. 2010); *United States v. Small*, 423 F.3d 1164 (10th Cir. 2005); *United States v. Guerra–Marez*, 928 F.2d 665 (5th Cir. 1991); *United States v. Leisure*, 844 F.2d 1347 (8th Cir. 1988).  The Seventh Circuit precedent is inapposite.  *See United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) (holding suppression not warranted under *Giordano* for alleged misstatements "inessential to the showing of probable cause" and the approval of the initial wiretap).  The remaining cases similarly fail to differentiate between the judicially-fashioned exclusionary rule and Title III's unqualified statutory mandate of suppression for violations.  *See United States v. Gonzalez, Inc*., 412 F.3d 1102 (9th Cir. 2005); *United States v. Cole*, 807 F.2d 262 (1st Cir. 1986).

the capacity to eavesdrop is exponentially greater. As such, the rigorous application of Title III's requirements is ever more urgent.  Even if the Court questions the wisdom of Title III's requirements, separation of powers requires congressional action.  *See Diamond v. Chakrabarty*, 447 U.S. 303, 318 (1980) (stating that it is impermissible to consider the question of wisdom in reading a statute).  Congress has not acted.  "Rewriting [legislation] is a job for Congress, if it is so inclined, and not for [a] Court."  *H.J., Inc., v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 249 (1989).

## <u>CONCLUSION</u>

For all the foregoing reasons, *amicus curiae* respectfully requests that this Court vacate the panel decision, and grant the Appellant rehearing or rehearing *en banc*.

Respectfully submitted,

By:    */s/ Tai H. Park*

Tai H. Park
Amy Dieterich
PARK & JENSEN LLP
630 Third Avenue
New York, New York 10017

G. Robert Blakey
Professor of Law Emeritus
NOTRE DAME LAW SCHOOL*
7002 East San Miguel Ave.
Paradise Valley, AZ 85253

*Noted for identification only

*Counsel for Amicus Curiae*

14

STATE OF NEW YORK  )
           )  ss.:   **AFFIDAVIT OF**
COUNTY OF NEW YORK )       **CM/ECF SERVICE**


   I, Natasha S. Johnson, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age.


   **On July 31, 2013**

deponent served the within: **Motion for Leave to File a Brief of *Amicus Curiae* Professor G. Robert Blakely in Support of Appellant**

   **upon:**


        **SEE ATTACHED LIST**


via the CM/ECF Case Filing System. All counsel of record in this case are registered CM/ECF users. Filing and service were performed by direction of counsel.


**Sworn to before me on July 31, 2013**


  **s/Maria Maisonet**         s/Natasha S. Johnson
   **MARIA MAISONET**
  Notary Public State of New York
    No. 01MA6204360
   Qualified in Bronx County
  Commission Expires Apr. 20, 2013

          **Job # 248790**

**Service List:**

**Michael Alexander Levy**
**Andrew Fish**
**Reed Michael Brodsky**
**United States Attorney's Office, Southern District of New York**
**1 Saint Andrew's Plaza, Suite 526**
**New York, NY 10007**

**Dechert LLP**
**Jonathan Streeter**
**1095 Avenue of the Americas New York NY 10036**
**212-698-3826**

*Attorneys for Appellee*

**Terence Joseph Lynam, -**
**Akin Gump Strauss Hauer & Feld LLP**
*Attorneys for Defendant-Appellant*
**1333 New Hampshire Avenue, NW**
**Washington, DC 20036**

**Lawrence S. Lustberg, Esq.,**
**Gibbons P.C.**
**1 Gateway Center**
**Newark, NJ 07102**